# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **ORTHO SOLUTIONS, LC d/b/a DYNAFLEX,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CASE NO. 4:19CV1307 HEA** |
| **ERIC SANCHEZ,** | ) ) ) | |
| **Defendant.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order, [Doc. No. 6] and Defendant's Motion to Dismiss and/or Transfer, [Doc. No. 14]. On May 29, 2019, the Court heard oral arguments on both motions. Furthermore, additional time was allowed for the parties to submit further memoranda.

The Court's Order addresses Defendant's motion to dismiss for improper venue pursuant to Rule 12(b)(3) and § 1406(a) and motion to transfer venue pursuant to § 1404(a).

## FACTS[1]

---

[1] The following facts are set out in Plaintiff's Verified Complaint.

DynaFlex is headquartered in St. Ann, Missouri. For over 50 years, DynaFlex has manufactured and distributed products worldwide in five dental related markets: Orthodontic Products, Orthodontic Laboratory, Dental Sleep Medicine, Clear Aligners and Digital Office Solutions. Over the course of the years of operation, DynaFlex has created a substantial and significant customer base and reputation for its products and customer service.

Effective March 28, 2016, Sanchez began his employment at DynaFlex as a sales representative/territory manager. Sanchez's territory was in California, specifically from Santa Barbara to San Diego and everything in between. In his role, Sanchez was selling DynaFlex products and services within interstate commerce as DynaFlex's products were shipped from warehouses located in St. Louis, Missouri for sales worldwide. Sanchez reported to the Vice President of Sales, who was located at headquarters in St. Ann, Missouri.

In his position as sales representative/territory manager, Sanchez had access to confidential information pertaining to DynaFlex's customers and products. Because of Sanchez's direct involvement in the expansion of DynaFlex's sales within his California territory, he participated in the creation of DynaFlex's trade secrets involving those customers within his territory. For this reason, DynaFlex required as a condition of his employment that Sanchez execute the Non-Competition and Confidentiality Agreement.

On March 28, 2016, Sanchez (while attending training physically at DynaFlex's headquarters in St. Ann, Missouri) accepted the terms and signed the Non-Competition and Confidentiality Agreement with DynaFlex (the "Agreement"). The Agreement prohibits Sanchez from working with a competitor of DynaFlex for two (2) years after employment with DynaFlex. Specifically, Section 1(a) of the Agreement provides:

> Non-Competition Agreement. Employee agrees that during Employee's employment with Company and for two (2) years after such employment shall have terminated for any reason, Employee shall not in any manner or in any capacity, directly or indirectly;
>
> (a) own, manage, control or participate in the ownership, management, operation or control of or have any interest, financial or otherwise, in or act as an officer, director, partner, member, manager, employee, agent, representative, consultant or independent contractor of, or assist in any way in, or assist any individual or entity in the conduct of, any business locate in or doing business in North America which is engaged in any business competitive to and/or with any business now or at any time during the period hereof engaged in by Company or any subsidiary, parent or affiliate of Company.

The Agreement further prohibits Sanchez from soliciting DynaFlex's clients or customers, which is set forth in Section 1(c) of the Agreement as follows:

> Non-Competition Agreement. Employee agrees that during Employee's employment with Company and for two (2) years after such employment shall have terminated for any reason, Employee shall not in any manner or in any capacity, directly or indirectly;
>
> (c) divert or attempt to divert clients or customers (whether or not such persons have done business with Company once or more than once) or accounts of Company.

Additionally, the Agreement prohibits Sanchez from disclosing DynaFlex's confidential and proprietary information, as set forth in Section 3:

> Non-Disclosure of Confidential & Proprietary Information.  Employee acknowledges that Confidential & Proprietary Information is important to and greatly affects the success of Company in competitive marketplace. Employee further agrees that while employed by Company and at all times thereafter, regardless of how, when and why such employment ends, Employee shall hold in the strictest confidence, and shall not disclose, duplicate and/or use for Employee or any other person or entity any Confidential & Proprietary Information without the prior written consent of a duly authorized officer of Company, or unless required to do so in order to perform Employee's responsibilities while employed by Company. Employee acknowledges that Employee is subject to and this Agreement is governed by the Missouri Uniform Trade Secrets Act.

The Agreement defines confidential and proprietary information in Section 2(a) as follows:

> "Confidential & Proprietary Information": Defined.  In the course of performing responsibilities as an employee of Company, Employee may come into possession of technical, financial and/or business information pertaining to Company which is not published or readily available to the public, including, but not limited to, any and all trade secrets, bids, proposals, plans, projections, strategies, designs, computer software, source code, patents, trademarks, copyrights, inventions, procedures, training methods, techniques, know how, methods of operation, marketing concepts and plans, manual, mailing lists, pricing lists, and information, sources of supplies, costs of products, rebates, and lists of and other information pertaining to and/or received from customers and/or suppliers and Employee Work Product as described in Section 2(b) hereof ("Confidential & Proprietary Information").  In addition, Employee may during the course of employment with Company receive training and instruction pertaining to the business of Company.

During his employment with DynaFlex, Sanchez acquired significant confidential and proprietary information and trade secrets of DynaFlex, including without limitation: (a) access and knowledge concerning DynaFlex's information relating to customers within his territory; (b) access and knowledge regarding DynaFlex's pricing overall and to specific customers; (c) access and knowledge regarding DynaFlex's product lines; and (d) access and knowledge regarding the specific requirements, specifications and purchases of customers within his territory.

Additionally, during Sanchez's employment with DynaFlex, he was directly involved in the development and expansion of DynaFlex's customers within his California territory.

On April 15, 2019, Sanchez resigned from DynaFlex. On April 17, 2019, Ms. Miller, General Counsel of DynaFlex, sent Sanchez a letter confirming that his resignation was effective immediately and requested, among other things, that he sign the enclosed Certificate of Compliance. Additionally, Ms. Miller warned Sanchez that whether or not he signed the Certificate of Compliance, DynaFlex will enforce the Non-Competition and Confidentiality Agreement. Sanchez disregarded Ms. Miller's communications and never signed the Certificate of Compliance.

After Sanchez's departure from DynaFlex, based on certain information and facts, DynaFlex has reason to believe that Sanchez has breached and continues to breach his contractual obligations with DynaFlex. Specifically, Sanchez is working for Henry Schein, a direct competitor of DynaFlex. A DynaFlex employee observed Sanchez working the Henry Schein booth at the American Association of Orthodontists ("AAO") Conference held in Los Angeles, California.
Henry Schein is in the same industry and directly competes with DynaFlex in orthodontic products, sleep apnea devices and clear aligners.

Additionally, upon information and belief, Sanchez has been in contact with or intends to divert DynaFlex's customers to Henry Schein in violation of the Agreement. In fact, Sanchez told certain employees at DynaFlex that DynaFlex will "take a major hit" in Sanchez's territory.

On May 6, 2019, DynaFlex sent a cease and desist letter to Sanchez regarding his violations of the Agreement. Additionally, on May 6, 2019, DynaFlex sent a cease and desist letter to Henry Schein advising it of Sanchez's violations of the Agreement.

On May 7, 2019, counsel for Henry Schein acknowledged the cease and desist letter and advised DynaFlex that he was reviewing the matter.

## PROCEDURAL BACKGROUND

On May 14, 2019, Plaintiff filed a Verified Complaint against Defendant. Therein, Plaintiff alleges claims against Defendant for breach of contract, violation of the Defend Trade Secrets Act, and violation of the Missouri Uniform Trade Secrets Act. Plaintiff seeks the entry of a temporary restraining order, preliminary and permanent injunction against Defendant enjoining him

(i)     With respect to confidential and proprietary information (including trade secrets) of DynaFlex, from disclosing, using, or providing any such documents, information, or trade secrets, directly or indirectly, to anyone, except for the return of such documents, information, or trade secrets directly to DynaFlex or its attorneys;

(ii)    During the period of two (2) years following the date of termination of Sanchez's employment with DynaFlex, from acting, directly or indirectly (whether as an owner, employee, consultant, independent contractor or any other role) in any capacity with a company that directly competes with DynaFlex including Henry Schein; and

(iii)   During the period of two (2) years following the date of termination of Sanchez's employment with DynaFlex, calling upon, soliciting, diverting, attempting to call upon, solicit, or divert (or assist in any of the foregoing), or accept business from/do business with any customer/potential customer of DynaFlex that was a customer/potential customer during Sanchez's employment with DynaFlex.

Plaintiff also seeks monetary damages.

On May 28, Defendant moved to dismiss the Verified Complaint for improper venue, under Federal Rules of Civil Procedure, 12(b)(3) and 28 U.S.C. § 1406(a). Alternative to dismissal, Defendant moves for an order transferring the case to the Central District of California, Southern Division pursuant to 28 U.S.C.

§ 1406(a) or 28 U.S.C. § 1404(a). The Court's Order addresses Defendant's

motion to dismiss for improper venue pursuant to Rule 12(b)(3) and § 1406(a) and

motion to transfer venue pursuant to § 1406(a) and § 1404(a).

## DISCUSSION

### Dismissal for Improper Venue

Section 1406(a) provides that "[t]he district court of a district in which is

filed a case laying venue in the wrong division or district shall dismiss, or if it be in

the interest of justice, transfer such case to any district or division in which it could

have been brought." Rule 12(b)(3) states that a party may move to dismiss a case

for "improper venue." "These provisions therefore authorize dismissal [or transfer,

in the case of § 1406(a)] only when venue is 'wrong' or 'improper' in the forum in

which it was brought." *Atl. Marine Constr. Co. v. U.S. Dist. Court of W. Dist. of

Tex.*, 571 U.S. 49, 55 (2013). The question of whether venue is "wrong" or

"improper" is generally governed by 28 U.S.C. § 1391. *Id.* That provision states

that "[e]xcept as otherwise provided by *law* ... this section *shall* govern the venue

of *all civil actions* brought in district courts of the United States." *Id.* (quoting §

1391(a)(1) (emphasis added)). Section 1391 further provides that:

> a civil action may be brought in—(1) a judicial district in which any
> defendant resides, if all defendants are residents of the State in which the
> district is located; (2) a judicial district in which a substantial part of the
> events or omissions giving rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated; or (3) if there is no
> district in which an action may otherwise be brought as provided in this

section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b). The Supreme Court has stated that "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in section 1391(b)." *Atlantic Marine Const. Co.*, 571 U.S. at 56. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under section 1406(a)." *Id.*

When reviewing a motion to dismiss under Rule 12(b)(3), the Court applies the same standard used for other motions to dismiss. *Transocean Grp. Holdings Pty Ltd. v. S.D. Soybean Processors*, 505 F. Supp. 2d 573, 575 (D. Minn. 2007); *Fitzgibbons v. Hill-Rom Co.*, No. 12-4009, 2012 WL 12548936, at *3 (D.S.D. Jun. 28, 2012) (J. Schrier) (citing *Transocean Grp. Holdings*, 505 F. Supp. 2d at 575)).

The Court must construe all facts in the light most favorable to the non-moving party, and take the facts alleged in the complaint as true. *Id.* Unlike motions to dismiss under Rule 12(b)(6), when ruling on a motion to dismiss for improper venue, the court may consider matters outside the pleadings. *Spanier v. Am. Pop Corn Co.*, No. 15-4071, 2016 WL 1465400, at *10 (N.D. Iowa Apr, 14, 2016). The defendant, as the moving party, has the burden of establishing that venue is improper. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947); *Shaffer v. Health Acquisition Co., LLC* 2019 WL 1049392, at *6 (W.D. Mo. Mar. 5,

2019); *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, 2019 WL 302515, at *4 (W.D. Mo. Jan. 23, 2019) (citing *Orshek*, 164 F.2d at 742).

Under 28 U.S.C. § 1406, if a plaintiff files a case in the wrong venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). A district court has the discretion to either dismiss a plaintiff's claims or transfer the case, sua sponte. *See De La Cruz v. United States*, No. 4:14CV3160, 2014 WL 4705145, at *2 (D. Neb. Sept. 22, 2014); *Camacho-Corona v. Douglas Cty. Dep't of Corr.*, No. 8:12CV132, 2012 WL 3112020, at *4 (D. Neb. July 31, 2012).

The averments in Plaintiff's Complaint establish that this Court is the improper venue for this case. Rather, it appears that the proper venue for Plaintiff's case under 28 U.S.C. § 1391(b)(1) or (2) is the United States District Court for the Central District of California, Southern Division since that is where the events or omissions giving rise to Plaintiff's claims seem to have occurred.[2]

Plaintiff argues that this Court is proper because of the time and action Defendant spent and took in Missouri for his employment. These factors, however, are not the salient inquiries, rather, the Court must analyze the actions *giving rise to* Plaintiff's claims. The actions giving rise to Plaintiff's claims are those action which Plaintiff claims Defendant took in contravention of his Non-

---

[2] There is no dispute that Defendant resides in the Central District of California, Southern Division.

Compete Agreement and misappropriation of Plaintiff's proprietary information. These actions *all* arose in the Central District of California, Southern Division. Defendant was employed as a sales representative in California. His interactions with customers occurred within his territory. Plaintiff claims Defendant began working for its competitor, Henry Schein in California. Plaintiff claims Defendant is using its proprietary information in his employment with Henry Schein in California. None of the actions giving rise to the claims against Defendant have occurred within this district. "In reviewing a motion under § 1391([b])(2), the Court should focus on the relevant alleged wrongful activities of the defendant, not on the activities of the plaintiff or the lawful conduct of either party." *Schlafly v. Eagle Forum,* 2017 WL 3996224, at *5 (E.D. Mo. Sept. 7, 2017) (citing *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995)).

## CONCLUSION

Based upon the foregoing analysis, proper venue is the United States District Court for the Central District of California, Southern Division. The Court finds that the interests of justice require transfer rather than dismissal.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss or Transfer, [Doc. No. 14] is granted.

**IT IS FURTHER ORDERED** that the Motion for Temporary Restraining Order [Doc. No. 6] remains pending for consideration by the Transferee Court.

**IT IS FURTHER ORDERED** that the Clerk of this Court shall transfer this case to the United States District Court for the Central District of California, Southern Division.

Dated this 12th day of June, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE